This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOENE GRISSOM and JOE EARL GRISSOM, Co-Personal Representatives of the ESTATE OF GENEVIEVE WILKINSON,**

Petitioners-Appellants,

v.                                                         NO. 32,087

**JOEL W. WILKINSON, JR., deceased, GEORGE RICHARD WILKINSON and JOEL KENT WILKINSON, Successor Co-Trustees of the JOEL W. WILKINSON, JR. TRUST,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Holland & Hart, LLP
Larry J. Montaño
Julia Broggi
Santa Fe, NM

for Appellants

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

The Risley Law Firm, P.C.
Gary Risley
Farmington, NM

for Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Petitioners Joe Earl and Joene Grissom (the Grissoms) appeal from the judgment entered by the district court denying their petition to set aside a quitclaim deed for fraud and constructive trust, denying their post-trial motion to amend their petition, and granting in part Respondent Joel W. Wilkinson Jr.'s creditor's claim. The Grissoms argue that the district court erred because it did not allow them to try an undue influence claim that was not explicitly pled in their petition or to amend their petition after trial to include a separate undue influence claim. We hold that, because the district court made unchallenged findings that would preclude the Grissoms from prevailing on an undue influence claim, and because the Grissoms have failed to set forth any evidence that they were unable to present and explain how such evidence would affect the outcome of the case, there is no reversible error in the district court's rulings. In addition, the Grissoms failed to preserve their argument regarding the creditor's claim; therefore, we will not consider it. We affirm.

**BACKGROUND**

{2}     This thirteen-year-old case revolves around the Grissoms' attempt to set aside a quitclaim deed for mineral interests in New Mexico. When she was ninety-five years old, the Grissoms' aunt, Genevieve (Trixie) Wilkinson, executed the subject deed, which reserved in Trixie a life estate in New Mexico mineral interests inherited from her late husband, Warlick Wilkinson, but quitclaimed her remainder interest to Warlick's son, Joel Wilkinson. The Grissoms accuse Joel of "abusing his relationship with [Trixie] by taking advantage of her old age and frail health so as to cause her to deed to him" the New Mexico mineral interests. Joel argues, and the district court found, that Trixie intended to execute the quitclaim deed to correct an error her late husband's lawyers had made in interpreting the law relative to her husband's will, in order to ensure that her stepson, Joel, received what her late husband had intended.

{3}     The procedural history is as follows. Three years after executing the quitclaim deed to Joel, Trixie died, and her will was admitted to probate in Oklahoma. The Grissoms are two of the beneficiaries of Trixie's estate and co-executors of her will. Joel is not a beneficiary under the will; however, due to the quitclaim deed, upon Trixie's death, he became entitled as a remainderman to the New Mexico mineral interests. Accordingly, Joel asserted various creditor's claims in the Oklahoma probate action related to the New Mexico mineral interests. The Grissoms counterclaimed for fraud and constructive fraud in an attempt to set aside the deed; however, because the mineral interests in dispute are located in New Mexico, the Oklahoma probate court

3

dismissed the Grissoms' counterclaim for lack of subject matter jurisdiction in December 2004.

{4}     Nearly two years later, the Grissoms filed an application for informal ancillary probate action and informal appointment of co-personal representatives in New Mexico. Joel again asserted a creditor's claim related to his entitlement to the New Mexico mineral interests. Rather than filing a counterclaim to Joel's creditor's claim as they had done in Oklahoma, the Grissoms filed a separate action in the district court to set aside the quitclaim deed. The petition in this separate action alleged two counts: (1) fraud; constructive trust (Count One), and (2) tortious interference with expected inheritance (Count Two). The district court consolidated the two New Mexico proceedings. Joel filed a motion for summary judgment on the Grissoms' fraud and tortious interference claims, but the district court never entered a formal order on that motion.

{5}     The district court ultimately held a bench trial on the Grissoms' petition and Joel's creditor's claim. On the first day of trial, the Grissoms voluntarily dismissed their tortious interference with expected inheritance claim. During trial, and after dismissing their tortious interference claim, the Grissoms attempted to present evidence of undue influence. Joel objected, stating that, to the extent the Grissoms sought to introduce evidence of undue influence as an element of a tortious interference claim, that claim had been dropped, and that to the extent the Grissoms

4

intended to assert undue influence as a distinct claim, the Grissoms had failed to plead it, either independently or as part of their fraud and constructive trust claim. Before ruling, the district court examined the allegations in Count One, considered what the elements of fraud and constructive fraud are, and determined that undue influence is not an element of either type of claim. The district court also rejected the Grissoms' argument that, because they sought a constructive trust remedy in Count One, and because that remedy is consistent with an undue influence claim, they had effectively pled undue influence. The district court noted that what was before it at trial was Count One for fraud and constructive trust, that Count One did not contain an undue influence claim, and that it would not admit evidence unrelated to that count. At trial, the district court heard evidence on Count One and, at the end of the trial, issued oral findings related to that claim. Based on those findings, the district court ruled against the Grissoms.

{6}     The Grissoms filed a motion to reconsider and/or for a new trial, in which they also sought for the first time to amend their petition to include a separate claim for undue influence. The Grissoms did not attach a proposed amended petition to their motion, nor did they set forth in the motion any allegations they would add to their existing petition in order to plead a separate undue influence claim. The district court denied the motion in a letter ruling.

{7} Ultimately, the district court issued its final judgment denying the Grissoms' petition and granting in part Joel's creditor's claim. The final judgment states that it affirms and incorporates the district court's oral and letter rulings, but the district court did not attach the relevant portions of the trial transcript or the letter ruling. This appeal timely followed.

**DISCUSSION**

**The District Court Did Not Commit Reversible Error in Refusing to Allow the Grissoms to Present a Claim for Undue Influence at Trial**

{8} The Grissoms first assert that the district court erred in not reading an undue influence claim in Count One of their petition. Specifically, they contend that although the petition does not explicitly state a separate claim for undue influence, Count One tracks the factors of an undue influence claim and gives a fair idea that the Grissoms asserted such a claim. As a result, the Grissoms argue that the district court erred in not allowing them to present evidence of undue influence at trial. We begin with the appropriate standard of review.

{9} The Grissoms ask us to apply de novo review to this issue because they claim the district court's ruling barring them from trying an undue influence claim, "is tantamount to a dismissal under Rule 1-012 NMRA." We disagree. If a district court's decision "is made on the pleadings in response to a motion to dismiss," we apply de novo review. *City of Sunland Park v. Santa Teresa Servs. Co.*, 2003-NMCA-106, ¶

6

39, 134 N.M. 243, 75 P.3d 843. "However, if additional facts are presented, the standard of review appropriate to the procedural posture in which the ruling is made should be applied." *Id.* In this case, the district court's ruling was made in response to Joel's trial objections that the Grissoms should not be allowed to present evidence on a claim they had not explicitly asserted in their petition. We review a district court's decision of whether to allow a claim that was not well-pled in the complaint to be presented at trial for abuse of discretion. *See Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, L.L.C.*, 2012-NMSC-004, ¶ 24, 274 P.3d 97 (holding that the district court did not abuse its discretion when it allowed a claim that was not well-pled to go to the jury); *Bellet v. Grynberg*, 1992-NMSC-063, ¶ 10, 114 N.M. 690, 845 P.2d 784 (stating that "[i]f prejudice would result, then allowing [an] unpleaded theory to be argued, and granting a[ post-trial] amendment, would be an abuse of discretion").

{10}    The Grissoms contend that although Count One is titled "fraud; constructive trust," and the term undue influence appears nowhere in that count, the factual allegations in Count One track the legal factors of an undue influence claim. Our courts have not provided "precise elements for undue influence." *Chapman v. Varela*, 2009-NMSC-041, ¶ 6, 146 N.M. 680, 213 P.3d 1109. However, a presumption of undue influence "arises if a confidential or fiduciary relation with a donor is shown together with suspicious circumstances." *Id.* ¶ 7 (internal quotation marks and citation

7

omitted). Suspicious circumstances include "(1) old age and weakened physical or mental condition of [donor]; (2) lack of consideration for the bequest; (3) unnatural or unjust disposition of the property; (4) participation of beneficiary in procuring the gift; (5) domination or control over the donor by a beneficiary; and (6) secrecy, concealment, or failure to disclose the gift by a beneficiary." *Id.* (internal quotation marks and citation omitted). "This is not an exhaustive list, nor is it a list of circumstances that are always suspicious. Furthermore, the presence of any of these circumstances is not in itself dispositive." *Id.* (internal quotation marks and citation omitted).

{11} The Grissoms assert that the following allegations track that a confidential or fiduciary relationship existed: (1) Joel was a "stepson to [Trixie] Wilkinson"; (2) in or around 1998, Joel began to "actively handle" Trixie's business affairs and became Trixie's "business advisor"; (3) Trixie "reposed confidence in Joel"; and (4) Joel "occupied a fiduciary and confidential relation to" Trixie. Similarly, the Grissoms assert that the following allegations track that suspicious circumstances existed: (1) Trixie was ninety-five years old and with failing eyesight at the time she executed the deed (old age and weakened physical or mental condition of the donor); (2) Joel obtained the deed for "inadequate consideration" (lack of consideration); (3) Trixie's heirs were "her four nieces, one nephew (two of which are [the Grissoms]) and a religious organization[,]" and Joel was not a named beneficiary of Trixie's will

8

(unnatural or unjust disposition of the property); (4) Joel "prepared and obtained" the deed (participation of beneficiary); and (5) Joel "prepared and had [Trixie] execute" the deed (domination or control over the donor by the beneficiary). The Grissoms argue that because Count One tracks the factors of undue influence, because undue influence and fraud are similar claims, and because constructive trust is a remedy for both kinds of claims, the district court erred by not construing Count One to include an undue influence claim.

{12} Even were we to decide that the district court abused its discretion by not reading an undue influence claim into Count One of the petition, we affirm the district court's decision because we hold that there is no reversible error. In civil cases, error is not grounds for setting aside a judgment unless it is "inconsistent with substantial justice" or "affects the substantial rights of the parties." *See Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (internal quotation marks and citation omitted). Rule 1-061 NMRA "is a mandate to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment *when*, and *only when*, it is clear that refusal to take such action will be substantially unjust." *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 31, 122 N.M. 543, 928 P.2d 269 (alteration, internal quotation marks, and citation omitted). "This rule applies not only to district courts, but also to appellate courts." *Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, ¶ 37, 108 N.M. 722, 779 P.2d 99. Furthermore, "[o]n appeal, error

9

will not be corrected if it will not change the result." *In re Estate of Heeter*, 1992-NMCA-032, ¶ 23, 113 N.M. 691, 831 P.2d 990.

{13}	This case presents us with a unique situation because, although the district court chose not to read a separate legal claim for undue influence into Count One, it still appeared to hear evidence and issue oral findings based on the factual allegations the Grissoms pled in Count One. Because the Grissoms contend the factual allegations in Count One track the factors of an undue influence claim, the district court essentially made findings based on what the Grissoms characterize as their undue influence claim. Put differently, the district court made its findings and decided the case based on the way the Grissoms' petition defines their claims, not on the legal elements of a fraud or constructive fraud claim or a constructive trust remedy.

{14}	Although the Grissoms assert that the district court "did not make any 'findings' or draw any 'conclusions' [related to] undue influence," we disagree. We recognize that the district court's findings are oral; however, the parties never requested written findings and conclusions. *See* Rule 1-052(A) NMRA ("In a case tried by the court without a jury . . . the court shall enter findings of fact and conclusions of law when a party makes a timely request."). Moreover, "while all of a district court's findings of fact and conclusions of law should typically be reduced to writing and entered along with the final order, failure to do so is not fatal if the findings and conclusions are part of the transcript on appeal." *Burris-Awalt v.*

10

*Knowles*, 2010-NMCA-083, ¶ 10, 148 N.M. 616, 241 P.3d 617. Here, neither of the parties submitted written findings and conclusions, and the district court stated it incorporated its oral and letter rulings in its final judgment. None of the parties disputed the district court's authority to do so, and the transcript containing those rulings is part of the transcript on appeal. Consequently, the oral findings are sufficient for our purposes on appeal. Moreover, the Grissoms did not specifically challenge any of the district court's oral findings, so those findings are binding upon them. *See* Rule 12-213(A)(4) NMRA ("The argument [in a party's brief-in-chief] shall set forth a specific attack on any finding, or such finding shall be deemed conclusive.").

{15}     The district court found that there was "little or no evidence, other than a backhanded reference in [a memorandum] to establish that Joel . . . in any way occupied a position of trust" with regard to Trixie or that Joel handled Trixie's business affairs. These findings roughly correlate with the allegations in Count One that the Grissoms assert the existence of a confidential or fiduciary relationship between Joel and Trixie. These findings also refute that any such relationship existed and ultimately undercut the Grissoms' undue influence claim. *See In re Estate of Gersbach*, 1998-NMSC-013, ¶ 8, 125 N.M. 269, 960 P.2d 811 ("We have held that a confidential relationship is required in order to support a determination of undue influence.").

{16} The district court also found that, although Trixie "was an elderly lady, she had some failing eyesight [and] perhaps some physical limitations," that there was "no testimony to indicate" that Trixie "in any way was mentally incompetent." To the contrary, the court found that Trixie "was more than competent enough to execute a codicil to her will over a year after the execution of the quitclaim deed." These findings also undermine the Grissoms' ability to establish a presumption of undue influence. *See In re Estate of Gonzales*, 1988-NMCA-098, ¶ 16, 108 N.M. 583, 775 P.2d 1300 ("No New Mexico case has based a presumption of undue influence on the fact that the testator was elderly without evidence that the testator's age had affected his or her mental ability."). Additionally, the district court found that there was no conflict of interest with regard to Joel. Rather, it found that Trixie "was loyal to her husband and loved him greatly" and that Trixie did "the honorable thing when [she discovered] that there had been an error in the interpretation of the law relative to her husband's will." In characterizing what happened, the district court said that when Trixie became aware that Joel had not received what his father intended, "she may have debated whether or not she should [execute the quitclaim deed]" but that "she went ahead and she did the right thing, and the right thing was to see that Joel . . . received what his father had intended him to receive." Although these findings are not individually linked to the specific allegations of Count One, they highlight the absence of any suspicious circumstances related to the execution of the quitclaim deed because

12

they indicate that Trixie made her own decision regarding the execution of the deed to Joel. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 6, 111 N.M. 6, 800 P.2d 1063 (stating that appellate court construes findings of fact liberally to sustain the judgment).

{17}     Further, the district court's findings in sum ultimately preclude the Grissoms from being able to establish undue influence. "The underlying theory of the doctrine [of undue influence] is that the donor is induced by various means to execute an instrument that, in reality, is the will of another substituted for that of the donor." *Montoya v. Torres*, 1991-NMCA-152, ¶ 16, 113 N.M. 105, 823 P.2d 905. "In making its determination the court must answer the question of whether the donor would have made the gift but for the undue influence exerted over him or her." *Id.* ¶ 19. Undue influence must be established by clear and convincing evidence. *See Gersbach*, 1998-NMSC-013, ¶ 9. "This standard requires the fact finder to reach an abiding conviction as to the truth of the facts found." *Montoya*, 1991-NMCA-152, ¶ 12. "To create a presumption [of undue influence,] the party contesting an instrument has the initial burden of establishing a prima facie case of undue influence." *Id.* ¶ 20. As discussed above, in order to raise this presumption, the Grissoms would need to establish both that Joel had a fiduciary or confidential relationship with Trixie and that there were suspicious circumstances. *See Chapman*, 2009-NMSC-041, ¶ 7. Even if we remanded the case, the Grissoms could not meet their burden to establish a prima facie case for

13

undue influence as the district court's uncontested findings reveal that no confidential or fiduciary relationship existed between Trixie and Joel, there was no conflict of interest with regard to Joel, Trixie chose to execute the quitclaim deed to see that Joel received what his father intended him to receive, and Trixie was "more than competent" to make this choice. Nor do we believe, in light of these findings, that the Grissoms could ultimately demonstrate by clear and convincing evidence that Joel induced Trixie by various means to execute the quitclaim deed.

{18}     In arguing that the district court's decision was not harmless error, the Grissoms generally state that "despite [the district court's] stray remarks on some of the factors that may concern undue influence, [its] decision must be reversed so that [the Grissoms] can present their claim and supporting evidence on all relevant factors, including factors [the district court] may believe could not be proven based on the limited record before [it]." To the extent the Grissoms are arguing that the district court's findings are flawed because they are stunted by the absence of evidence the district court did not allow them to introduce at trial, the Grissoms have failed to meet their burden to demonstrate prejudice. "An error is harmless unless the complaining party can show that it created prejudice." *Kennedy*, 2000-NMSC-025, ¶ 26; *see Scott v. Brown*, 1966-NMSC-135, ¶ 20, 76 N.M. 501, 416 P.2d 516 ("The plaintiffs have the burden of demonstrating that they were prejudiced by the claimed error."); *see also Farmers, Inc.*, 1990-NMSC-100, ¶ 8 (stating that the appellate court presumes

14

the district court is correct and the burden is on the appellant to clearly point out how the district court allegedly erred).

{19} "We compel the reversal of errors for which the complaining party provides the slightest evidence of prejudice and resolve all doubt in favor of the complaining party." *Kennedy*, 2000-NMSC-025, ¶ 26. However, "[w]e will not set aside a judgment based on mere speculation that [the asserted error] influenced the outcome of the case." *Id.* ¶ 27; *see Fahrbach*, 1996-NMSC-063, ¶ 32 (requiring direct evidence that the purported error contributed to or directly resulted in the jury's verdict and refusing to speculate that an error influenced the jury's verdict). The Grissoms have not met their burden on appeal to set forth direct evidence that the district court's exclusion of evidence on undue influence prejudiced them because they do not identify on appeal what evidence they would have presented if the district court had allowed them to do so, nor do they show how the presentation of that additional evidence would affect the outcome of the case. The Grissoms therefore cannot demonstrate that a different ruling would have rendered a different result.

{20} As an initial matter, we note that the Grissoms do not claim they were deprived of the opportunity to take discovery on undue influence. They only assert that the district court erred by not allowing them to present evidence of undue influence that they already had and wished to present at trial. The fact that undue influence is an element of a tortious interference with an expected inheritance claim, a claim that was

in the case until the first day of trial, further indicates that the Grissoms were able to conduct discovery on undue influence. We therefore see nothing that prevented the Grissoms from being able to collect evidence on undue influence or to identify the evidence they collected and wanted to introduce to support a claim for undue influence.

{21} Second, it appears the district court admitted a large portion of the evidence the Grissoms proffered. Upon agreement of the parties, the district court reviewed all of the deposition testimony that both of the parties wished to use at trial, which comprised entire deposition transcripts and video depositions. The district court also admitted all but two of the Grissoms' proffered documentary exhibits. The Grissoms have not appealed the district court's evidentiary rulings on those exhibits, nor have they made any mention of them on appeal.

{22} Third, although the Grissoms highlight several times when the district court prevented them from eliciting testimony from live witnesses, they largely fail to specify what evidence they were trying to introduce during those instances and how that evidence relates to an undue influence claim. The one time the Grissoms cite to specific testimony they tried to elicit at trial, they simply excerpt part of the exchange between the parties and the district court related to the exclusion of the testimony, note that the exchange represents "just one example" of when the district court "excluded critical evidence," and summarily conclude that as a result they were "harmed in both

16

law and fact." However, the prejudice the Grissoms claim to have suffered as a result of that exclusion is not self-evident. In the excerpted exchange, counsel for the Grissoms stated that the objected-to testimony was "important as to one of the elements that pertains to the undue influence, the constructive fraud, that [the quitclaim deed] was kept secret from [the Grissoms] by . . . Joel." On appeal, the Grissoms do not describe what additional testimony they would have elicited if they had been allowed to do so, how potential evidence that the quitclaim deed was kept secret from the Grissoms is "critical," to establishing undue influence, or how that evidence would have affected the outcome of the case had the court admitted it. This showing is insufficient for the Grissoms to establish prejudice. *See Fahrbach*, 1996-NMSC-063, ¶ 32 (determining that the plaintiff's failure to offer any evidence that the asserted error contributed to the ultimate result of the case rendered the error harmless).

**{23}** Because the Grissoms have not met their burden to prove prejudice, we cannot conclude that the district court's asserted error influenced the outcome of the case. Seeing nothing to suggest that upholding the district court's judgment would be substantially unjust, we hold that there was no reversible error.

**The District Court Did Not Abuse Its Discretion When It Denied the Grissoms' Post-Trial Motion to Amend**

17

{24}     The Grissoms also argue that the district court erred when it denied their post-trial motion to amend the petition. Because the Grissoms moved to amend their petition for the first time after the trial, we construe their motion to be made under Rule 1-015(B) NMRA. *See* Rule 1-015(B) ("If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."). "A district court's denial of a motion to amend is reviewed under an abuse of discretion standard." *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 26, 143 N.M. 133, 173 P.3d 55. The denial of a motion to amend does not constitute an abuse of discretion where the amendment would have been futile. *See id.* The Grissoms did not attach a proposed amended petition to their post-trial motion to amend, nor did they set forth in the motion any allegations whatsoever that they would add to their petition were they permitted to amend it. We see nothing to demonstrate that allowing the amendment would subserve the presentation of the merits of the case. Furthermore, in light of the district court's findings, as discussed above, allowing the Grissoms to amend their petition would be futile. We hold that the district court did not abuse its discretion in denying the amendment.

18

**The Grissoms Failed to Preserve Their Argument on the Creditor's Claim**

{25} Finally, the Grissoms argue that the district court erred in granting Joel any relief under his creditor's claim because the outcome of the creditor's claim "hinges upon [the district court's] erroneous dismissal of [the Grissoms'] undue influence claim," and because New Mexico's Uniform Principal and Income Act (UPIA), NMSA 1978, §§ 46-3A-101 to -603 (2001, as amended through 2011) is inapplicable to conveyances such as the at-issue quitclaim deed. Because we affirm the district court's determination that the quitclaim deed is valid, we will not consider the Grissoms' first argument. With regard to the Grissoms' argument that the UPIA does not apply to deeds, the Grissoms concede that this is "a new argument" raised on appeal. Accordingly, because the Grissoms failed to preserve this argument for review, we will not address it here. *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court.").

**CONCLUSION**

{26} For the reasons set forth above, we affirm the decision of the district court.

{27} **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

19

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**M. MONICA ZAMORA, Judge**